# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DARRELL WILDER, also known as DARRELL JOHN WILDER, also known as DARRELL J. WILDER,

      Defendant-Appellant.

UNPUBLISHED
November 27, 2018

No. 327491
Wayne Circuit Court
LC No. 14-004600-FH

---

ON REMAND

Before: BORRELLO, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

This case returns to this Court on remand from our Supreme Court. Defendant appeals as of right his jury trial convictions of felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), third offense, MCL 750.227b.[1] Defendant was sentenced to five years' probation for the felon in possession conviction and 10 years' imprisonment for the felony-firearm conviction. In our previous opinion affirming defendant's convictions, we concluded in relevant part that the trial court did not err when it allowed the prosecutor to cross-examine defendant's wife, Tameachi Wilder, about her knowledge of defendant's two prior felony-firearm convictions. *People v Wilder*, unpublished per curiam opinion of the Court of Appeals, issued September 27, 2016 (Docket No. 327491) (*Wilder I*), pp 2-5, rev'd in part & remanded 502 Mich 57 (2018). Our Supreme Court reversed "that part of the Court of Appeals' judgment holding that the cross-examination of defense witness Tameachi Wilder concerning whether she knew of defendant to carry guns and her knowledge of defendant's prior weapons convictions was not error." *People v Wilder*, 502 Mich 57, 60; 917 NW2d 276 (2018) (*Wilder III*). The case was remanded to this

---

[1] The jury found defendant not guilty of carrying a concealed weapon, MCL 750.227.

Court to "consider whether the error was harmless." *Id*. For the reasons set forth in this opinion, we again affirm.

## I. BACKGROUND

The underlying facts of this case are fully set forth in our prior opinion. *Wilder I*, unpub op at 1-2. In sum, defendant was arrested and prosecuted after Detroit Police Officers Steven Fultz and David Shaw saw defendant place a handgun in the trunk of a car. *Id*. The parties stipulated at trial that defendant had a prior felony conviction and was not eligible to possess a firearm at the time of his arrest. *Id*. at 2. At issue is the testimony of Tameachi, the pertinent portion of which was summarized as follows by our Supreme Court in *Wilder III*, 502 Mich at 60-61:

> On direct examination, [Tameachi] testified that she did not see defendant with a gun when he left the house on the date in question, that to her knowledge he did not own a gun, and that she did not have any weapons in the house. She was not asked about and did not offer any other information about defendant's history with guns.
>
> On cross-examination, the prosecutor did not question [Tameachi] about defendant's possession and ownership of weapons on the day of the crime but instead asked three times whether [Tameachi] knew of defendant to carry guns. [Tameachi] responded "no" to each question.[1] Over defendant's objection, the trial court – which mischaracterized both the evidence on direct examination and [Tameachi] (referring to her as a character witness rather than a fact witness) – then permitted the prosecutor to question [Tameachi] about defendant's prior weapons convictions.[2]

---

[1] The precise exchange was as follows:

> *Q*. Do you know of Mr. Wilder to carry weapons?
>
> *A*. No.
>
> *Q*. Do you know of him to carry guns?
>
> *A*. No.
>
> *Q*. You've been with him for nine years and you don't know of him to carry guns?
>
> *A*. No.

[2] The precise exchange concerning the first prior conviction was as follows:

> *Q*. And you know that he was convicted of carrying a weapon back then, correct?

*A*. Yes.

*Q*. So you knew that he carried weapons, right?

*A*. No. I didn't know but he was convicted.

*Q*. Okay. You didn't know that he—you didn't see a weapon in your house?

*A*. No.

*Q*. Do you know the circumstances behind that?

*A*. No.

The prosecutor then asked about the second prior conviction, as follows:

*Q*. And you know that he was convicted of having a weapon back in August of 2010 too, right?

*A*. Yes.

*Q*. Was that gun in your home?

*A*. No.

---

The jury acquitted defendant of carrying a concealed weapon but found defendant guilty of felon-in-possession and felony-firearm.

Defendant appealed as of right to this Court, where he argued in relevant part that "the trial court erred when it allowed the prosecutor to question Tameachi about her knowledge of defendant's prior firearms convictions because it allowed the presentation as inadmissible 'character evidence' under both MRE 404(b) and MRE 609." *Wilder I*, unpub op at 3. We concluded that this evidence was not inadmissible under MRE 404(b), and that the trial court did not err by admitting the evidence, because the evidence of defendant's prior convictions was admitted for the noncharacter purpose of impeaching Tameachi's testimony that defendant did not carry guns and testing Tameachi's veracity on this issue. *Id*. at 3-4. We further concluded that MRE 609 was inapplicable because the prosecutor did not present evidence of *Tameachi's* prior convictions but instead presented evidence of Tameachi's knowledge of *defendant's prior convictions* in order to show that Tameachi's trial testimony contained contradictions and was therefore not credible.[2] *Id*. at 5. We affirmed defendant's convictions.[3] *Id*. at 1.

---

[2] MRE 609 provides requirements for "attacking the credibility of a witness" by introducing "evidence that *the witness* has been convicted of a crime." (Emphasis added.)

Defendant filed an application for leave to appeal in our Supreme Court. The Supreme Court ordered oral argument on whether to grant the application and directed the parties to file supplemental briefs "addressing: 1) whether the trial court erred by allowing the prosecutor to cross-examine the defendant's wife about his prior firearms-related convictions; (2) whether the prosecutor improperly raised a collateral issue to admit evidence of the defendant's prior felonies through impeachment; and (3) whether any error was harmless. *People v Wilder*, 500 Mich 997 (2017) (*Wilder II*) (citations omitted).

After having held oral argument on the application, our Supreme Court issued its opinion reversing this Court's judgment in part. *Wilder III*, 502 Mich at 60. The Court held that the evidence of defendant's prior convictions admitted through the prosecutor's cross-examination of Tameachi was not admissible under MRE 404. *Id*. at 63.

First, our Supreme Court concluded that although "impeachment by contradiction can be a proper purpose for the admission of other-acts evidence" under MRE 404(b)(1), the prosecutor's initial questions in this case "were not logically relevant to a proper purpose under MRE 404(b) because they were not designed to elicit an answer contradicting any statements made by the witness on direct examination." *Id*. at 63-64, 65 (citation omitted). The Court explained:

> As it pertained to weapons, the witness's direct testimony was limited to whether defendant owned a gun or possessed one on the date in question. This testimony would not have been contradicted even if the witness had acknowledged "know[ing] of" defendant to more generally carry weapons. Thus, although the prosecutor articulated a proper purpose under MRE 404(b)—impeachment by contradiction—the prosecutor did not establish that the questions asked were logically relevant to impeachment. The prosecutor's broad and repeated questions about defendant's weapons-carrying proclivities were simply an attempt to elicit propensity evidence. [*Id*. at 65-66 (citation omitted).]

Next, the Supreme Court stated that "[a]bsent a proper purpose, evidence of defendant's other acts was inadmissible under MRE 404(a) unless defendant opened the door by introducing evidence of his good character." *Id*. at 66. The Court explained that defendant "never opened the door by eliciting testimony as to his good character from the defense witness on direct examination" and that the "prosecutor's tactic—i.e., shifting the focus from the pertinent facts to which the witness testified on direct examination to a broader inquiry about defendant's general weapons proclivities—was an impermissible attempt by the prosecutor to open the subject of defendant's character." *Id*. at 66-67. The Court concluded that the prosecutor's attempt to elicit character evidence about defendant on cross-examination of another witness when defendant had never offered evidence of his own character was not permitted by MRE 404(a)(1). *Id*. at 67-68.

---

[3] We also rejected other arguments raised by defendant on appeal, but those issues are not pertinent to the issue decided by our Supreme Court or the issue now before this Court on remand from our Supreme Court.

-4-

Finally, our Supreme Court concluded that although "the prosecutor maintain[ed] that her second set of questions regarding defendant's prior firearm convictions was appropriate to impeach the witness's response to the first set of improper questions," a party nonetheless "cannot seek to elicit inadmissible character evidence on cross-examination when the opposing party has not opened the door and then claim the right to impeach the elicited denial as a subterfuge to elicit even more inadmissible character evidence." *Id*. at 68. Accordingly, the Supreme Court reversed "that part of the Court of Appeals' judgment holding that the cross-examination of defense witness Tameachi Wilder concerning whether she knew of defendant to carry guns and her knowledge of the defendant's prior weapons convictions was not error," and it remanded the matter to this Court "to consider whether the error was harmless." *Id*. at 69-70. The Supreme Court denied leave to appeal in all other respects. *Id*. at 70 n 19.

On remand in this Court, we granted the parties' joint motion to file supplemental briefs. The parties filed their respective supplemental briefs; defendant argues that the error was not harmless, while the prosecutor argues that the erroneously admitted evidence was not outcome determinative.

## II. APPLICABLE LEGAL PRINCIPLES

Our Supreme Court, having concluded that the trial court erred by admitting the evidence at issue, has instructed this Court to consider whether this evidentiary error was harmless. "Preserved, nonconstitutional errors are subject to harmless-error review, governed by MCL 769.26[.]" *People v Lyles*, 501 Mich 107, 117; 905 NW2d 199 (2017). MCL 769.26 provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

"[A] defendant carries the burden of showing that 'it is more probable than not that the error was outcome determinative.' " *Lyles*, 501 Mich at 117-118, quoting *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). "In making this determination, the reviewing court should focus on the nature of the error in light of the weight and strength of the untainted evidence." *Lyles*, 501 Mich at 118 (quotation marks and citation omitted). "[W]hether admission of other-acts evidence is harmless is a case-specific inquiry; the effect of an error should be determined by the particularities of an individual case." *People v Denson*, 500 Mich 385, 413 n 15; 902 NW2d 306 (2017). When considering whether an error was harmless, the question is whether there would have been a "*difference in the outcome*" had the error not occurred. *Lyles*, 501 Mich at 118.[4]

---

[4] Defendant, citing *People v Bruner*, 501 Mich 220, 232; 912 NW2d 514 (2018), also attempts to characterize this issue as one involving a preserved constitutional error and argues that this

III.  ANALYSIS

_____

Court's review should instead consider whether the prosecution has shown that the error was harmless beyond a reasonable doubt.  But our Supreme Court did not conclude that a constitutional error occurred; it reviewed the issue as an evidentiary one, clearly finding only an evidentiary error.  See *Wilder III*, 502 Mich at 60, 62-63.  "Evidentiary errors are nonconstitutional."  *People v Blackmon*, 280 Mich App 253, 259; 761 NW2d 172 (2008).  Moreover, defendant's claim of constitutional error is predicated on a vague, general assertion that his due process right to a fair trial was violated.  Unless a defendant also asserts the violation of a specific constitutional right, "[a] general claim that the defendant was denied his or her due process right to a fair trial is a claim of nonconstitutional error."  *People v Blevins*, 314 Mich App 339, 354; 886 NW2d 456 (2016).

Additionally, the prosecution argues that this issue is unpreserved and must be reviewed for plain error affecting substantial rights because defendant did not object at trial to the prosecutor's initial questions asked of Tameachi that ultimately led to the questions regarding defendant's prior convictions.  On plain error review, a defendant bears the burden of demonstrating (1) error, (2) that was plain, and (3) that affected substantial rights—i.e., prejudiced the defendant—by affecting the outcome of the lower court proceedings.  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  If these three requirements are satisfied, reversal is only warranted if the plain error "resulted in the conviction of an actually innocent defendant" or "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence."  *Id*. (quotation marks and citation omitted; alteration in original).  However, the prosecution's argument in this case for application of plain error review is unavailing.  Our Supreme Court clearly instructed this Court on remand to "consider whether the error was harmless," *Wilder III*, 502 Mich at 60, and not whether there was a plain error affecting defendant's substantial rights.  Furthermore, as we noted in our previous opinion, a discussion was held during trial and outside the presence of the jury immediately after the prosecutor's initial questions, during which defense counsel objected to the prosecutor's request to question Tameachi about defendant's prior felony-firearm convictions on the ground that "the prosecutor was 'simply trying to back-door and get in convictions that she knows she can't get in.' "  *Wilder I*, unpub op at 3.  Our Supreme Court recognized that the prosecutor's initial questions functioned as a subterfuge for introducing the testimony about defendant's prior convictions; the Court further stated that it "firmly reject[ed] this tactic" and "would not penalize defendant for his counsel's failure to object to the initial improper question."  *Wilder III*, 502 Mich at 67-69, 67 n 15, 68 n 16.  Thus, it is apparent that our Supreme Court treated this issue as preserved.

For the above reasons, we conclude that we have been instructed by our Supreme Court to review whether a preserved, nonconstitutional error was harmless.  "When an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order." *People v Russell*, 297 Mich App 707, 714; 825 NW2d 623 (2012).

-6-

Defendant was convicted of felon-in-possession and felony-firearm. The crime of felon-in-possession is defined in MCL 750.224f, which makes it a felony for an individual who has been convicted of a felony to, among other things, possess or carry a firearm unless certain requirements not at issue in the instant case are met. See also *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016). "To be guilty of felony-firearm, one must *carry* or *possess* the firearm, and must do so *when* committing or attempting to commit a felony." *People v Burgenmeyer*, 461 Mich 431, 438; 606 NW2d 645 (2000); see also MCL 750.227b(1). "Possession of a firearm can be actual or constructive, joint or exclusive. [A] person has constructive possession if there is proximity to the article together with indicia of control." *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011) (quotation marks and citations omitted). Felon-in-possession may serve as the underlying felony to support a conviction for felony-firearm. *People v Calloway*, 469 Mich 448, 452; 671 NW2d 733 (2003).

In this case, defendant's convictions were strongly supported by the untainted and unequivocal testimony of two police officers who observed defendant in possession of the firearm. Both Fultz and Shaw testified that they observed an individual, later identified as defendant, pull a handgun from his pocket and place it in the trunk of a car as Fultz and Shaw approached the car. Neither officer saw anyone else walk near the trunk of the car. The officers approached and placed handcuffs on defendant. Fultz opened the trunk, and Shaw recovered a handgun from inside. The gun was the only item in the trunk. Additionally, the parties stipulated at trial that defendant had a prior felony conviction and was not eligible to possess a firearm at the time of his arrest; consequently, the pertinent element at issue for purposes of both the felon-in-possession and felony-firearm charges was whether defendant carried or possessed the firearm. Because the trial evidence set forth above established that defendant possessed a firearm when he was ineligible to do so based on his prior felony conviction, defendant's convictions for felon-in-possession and felony-firearm were adequately supported by the strong, untainted evidence.

Examining the erroneously admitted testimony regarding Tameachi's knowledge of defendant's prior convictions, it is worth emphasizing that the jury was independently apprised that defendant had previously been convicted of a felony and was ineligible to possess a firearm at the time of his arrest. The references to defendant's prior convictions during Tameachi's cross-examination were relatively brief, and the convictions were from several years before the incident that led to the instant case. The prosecutor argued during closing argument that Tameachi's admission that she knew about defendant's prior convictions showed that she lied. However, Tameachi's credibility was essentially inconsequential in this case because the evidence for which defendant sought to rely on her was extremely weak for his defense. Even if the jury were to believe Tameachi's testimony that she did not see defendant with a gun when he left the house that day, especially considering that Tameachi was not present in the vacant lot where Fultz and Shaw observed defendant with a gun, Tameachi's testimony did little to undercut the police officers' testimony that they saw defendant with the gun on his person and saw him place it in the trunk of the car, after which they immediately confronted defendant and located the gun. In other words, even accepting Tameachi's's testimony as true, it is not at all contradictory to the testimony of the police officers because defendant could have had the gun hidden from Tameachi's view or obtained it at some point after leaving her sight. We also note that there was testimony at trial that defendant failed to appear for the originally scheduled date of his trial. He was arrested approximately four months later, after which the instant trial

commenced. Evidence of flight is probative because it may indicate consciousness of guilt. See *People v Unger*, 278 Mich App 210, 226; 749 NW2d 272 (2008).

Therefore, in light of the overwhelming untainted evidence demonstrating that defendant is guilty of these crimes involving straightforward and uncomplicated facts, we conclude that defendant has failed to meet his burden on appeal of showing that it is more probable than not that the erroneous admission of Tameachi's cross-examination testimony regarding her knowledge of defendant's prior felony-firearm convictions was outcome determinative. *Lyles*, 501 Mich at 117-118; *Denson*, 500 Mich at 413 n 15. Because the error was harmless, there is no error requiring reversal and we affirm defendant's convictions.

Affirmed.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Riordan