*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
August 18, 2022

v

CHAUNCEY RONELL JACKSON,

Defendant-Appellant.

No. 356081
Wayne Circuit Court
LC No. 19-006602-01-FC

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of felon in possession of a firearm (felon-in-possession), and possession of a firearm during the commission of a felony (felony-firearm). The trial court sentenced defendant as a second-offense habitual offender to 47 to 90 months in prison for the felon-in-possession conviction and a consecutive two-year term of imprisonment for the felony-firearm conviction. While we find no errors warranting reversal with respect to defendant's convictions and, therefore, affirm them, we vacate the trial court's sentence for the felon-in-possession conviction and remand for resentencing for that offense.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise from his possession of a firearm during the evening of February 19, 2019, at a "drug house" that belonged to his friend, Jamal Staples, in River Rouge, Michigan. On the evening in question, the police were called to the neighborhood because of a report of a man being shot. The police found Staples, who had a gunshot wound to his shoulder, standing outside. Inside Staples's house, the police found Staples's girlfriend, Bryanna Gentry, fatally shot in the head, and a small child who was unharmed. There was evidence that defendant, his girlfriend Kelly Lopez, and his friend Algen Dunson, were all at Staples's house at the time of the shootings.

The prosecutor argued at trial that defendant was the shooter, contending that he shot Staples during an argument about Lopez being in his house, and shot Gentry because she was a witness. The prosecution's chief witness was Dunson, who testified that defendant and Staples got into an argument and that defendant shot Staples, after which Dunson fled the scene. Dunson

-1-

testified that when he saw defendant later that day, defendant stated "he shouldn't have killed that girl." Staples did not testify at trial because he could not be located. Lopez stated she did not recall hearing or seeing anything because she had used heroin that day.

Defendant's theory was that Dunson had continuously lied throughout the police investigation and implicated defendant only to protect himself, and that the police had "tunnel vision" by focusing only on defendant during the investigation. The jury found defendant guilty of one count of felon-in-possession, MCL 750.224f(1), and one count of felony-firearm, MCL 750.227b, but acquitted him of the more serious charges of first-degree premeditated murder, MCL 750.316(1)(a), assault with intent to commit murder, MCL 750.83, and two additional counts of felony-firearm. As noted above, defendant was sentenced to 47 to 90 months in prison for the felon-in-possession conviction and a consecutive two-year term of imprisonment for the felony-firearm conviction.

## II. JURY INSTRUCTIONS

Defendant argues that he is entitled to a new trial because the trial court failed to give a specific unanimity instruction with respect to the firearm charges. He argues that because there was evidence that defendant possessed a firearm on different dates, the trial court should have instructed the jury that it had to unanimously agree that the act that constituted the charged offense of felon-in-possession occurred on February 19, 2019, and not on any other date that defendant may have possessed a firearm. Alternatively, defendant argues that defense counsel was ineffective for failing to request a specific unanimity instruction, and for failing to object when one was not given. We disagree.

## A. SUBSTANTIVE CLAIM

Defendant did not object to the trial court's instructions to the jury and has, therefore, failed to preserve the issue on appeal. *People v Sabin (On Remand)*, 242 Mich App 656, 657-658; 620 NW2d 19 (2000) (to preserve a challenge to the trial court's decision to give or not give a specific jury instruction, the party must object to or make a request for the specific jury instruction). An unpreserved claim of instructional error is reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

As defendant acknowledges, he did not object to the trial court's jury instructions as given, or request a specific unanimity instruction. Indeed, after the trial court completed its final instructions and before the jury was excused to begin deliberations, the court asked the parties whether there were any objections, additions, or corrections. Defense counsel stated, "No, Your Honor, with the correction that you just made."[1] In response, the trial court asked if everything that it had read to the jury was proper, and defense counsel responded: "Yes, Your Honor. Yes." By expressly approving the jury instructions, defendant waived appellate review of his substantive

---

[1] The correction involved the trial court's expert-witness instructions, which are not at issue on appeal. Defendant acknowledges that defense counsel "did not object or request a special unanimity instruction."

claim of instructional error.[2]  *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011).
Defendant's waiver extinguished any error, leaving no error to review.  *Id*.

## B.  INEFFECTIVE ASSISTANCE OF COUNSEL

"A claim of ineffective assistance of counsel is a mixed question of law and fact."  *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008).  "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo."  *Id*.  Because defendant failed to raise the claim of ineffective assistance in the trial court in a motion for a new trial or request for an evidentiary hearing, our review of this issue is limited to mistakes apparent on the record.  *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

"To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice."  *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013).  "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different."  *Id*.  Trial counsel is presumed competent, and "[a] defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy."  *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

Whether defense counsel's failure to object to the trial court's jury instructions was objectively unreasonable turns on whether the court's instructions fairly presented the issues and sufficiently protected defendant's substantial rights.  Due process requires that the trial court "properly instruct the jury so that it may correctly and intelligently decide the case."  *People v Clark*, 453 Mich 572, 583; 556 NW2d 820 (1996).  "A defendant has the right to a unanimous verdict and it is the duty of the trial court to properly instruct the jury on this unanimity requirement."  *People v Martin*, 271 Mich App 280, 338; 721 NW2d 815 (2006).  "Under most circumstances, a general instruction on the unanimity requirement will be adequate."  *Id*.  However, if the prosecution offers multiple acts by a defendant, each of which would satisfy the *actus reus* elements of a single charged offense, the trial court is required to instruct the jury that it must unanimously agree on the same specific act if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt.  *People v Cooks*, 446 Mich 503, 524; 521 NW2d 275 (1994).  When the acts alleged are not materially distinct or there is no reason to believe the jury may be confused or disagree about the factual basis of the defendant's guilt, "a general instruction to the jury that its verdict must be unanimous does not deprive the defendant of his right to a unanimous verdict."  *Id*. at 530.

---

[2] Waiver is defined as "the intentional relinquishment or abandonment of a known right."  *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (quotation marks and citations omitted).  "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error."  *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citations omitted).

Defendant argues that defense counsel was ineffective in this regard because it is likely that the jury was confused or disagreed about the factual basis of defendant's guilt on the firearm charges, given the evidence that the prosecutor presented at trial and the following comments by the prosecutor during closing argument:

The defendant says I never talked about it with anybody. And the defendant by the way in his interview if you listen there's a lot more evidence if you, if you're listening carefully there's a lot of like you know kind of cool stuff that you see that proves the case.

One of which is that the defendant talks about an incident later on a couple of months later where he's with Algen. This is before— I don't know when it was when he was with Algen, but he says he gave Algen a, a gun. Remember that? Like he got out of a car with Algen and gave Algen a gun and Algen said is that— Or he takes out a gun, the defendant takes out a gun and Algen says is that for me? And he goes no, we're cool. You know and he hands it to him to show I'm not, I'm not killing you right now. So why would— That's what the defendant says. Why would Algen say is that for me when, when he, when he takes the gun out and he has the gun in his hand? There's all kinds of things like that.

In the quoted remarks, it is clear the prosecutor was not urging the jury to find defendant guilty of the firearm charges because he possessed a firearm months after the incident on February 19, 2019. Viewed in context, it is apparent that the prosecutor was referring to this evidence to argue that defendant's version of the events regarding the night of the shooting was not credible and, contrary to the defense theory that it was Dunson who possessed the gun that night, the prosecutor was suggesting that defendant's statement in his interview made it more likely that defendant possessed the firearm on that date when the prosecutor argued: "Why would Algen say is that for me when, when he, when he takes the gun out and he has the gun in his hand?" In fact, this evidence, as well as the testimony from Lopez (that defendant possessed a firearm before the day of the shooting but not on it), was clearly used to argue that it was more probable that defendant, not Dunson, had the weapon on February 19, 2019. Viewed in this context, neither the evidence of defendant's possession of a firearm on other dates, nor the prosecutor's comments on this evidence in closing argument were reasonably likely to cause juror confusion or disagreement about the factual basis of defendant's guilt on the firearm charges such that a specific unanimity instruction was required. See *Cooks*, 446 Mich at 530.

Defendant also contends that the length of the jury's deliberations and the fact that the jury twice indicated that it was deadlocked signaled that the jury was confused and disagreed on the basis of defendant's guilt for the felon-in-possession charge. During deliberations, the jury sent a note that stated: "When deliberating what is our course of action when we have unanimous decisions on some counts and a current deadlock for others?" With the parties' agreement, the trial court gave the deadlocked-jury instruction, including: "[if] you think it would be helpful you may submit to the Deputy Sheriff a written list of issues that are dividing or confusing you. It will then be submitted to me. I will attempt to clarify or amplify the instructions in order to assist you in your further deliberations." There were no follow-up questions. The next day, the jury asked to review certain exhibits and later sent another note stating: "We have continued deliberating and we are unable to render a unanimous verdict for some counts." The trial court again read the

-4-

deadlocked-jury instruction. The next day, the jury asked to review an officer's bodycam video and certain defense exhibits, and later reached a unanimous verdict. Although the jury initially indicated that it was having trouble reaching a consensus on "some counts," it never identified the counts that were the subject of disagreement. Moreover, the jury ultimately reached a unanimous verdict on all counts, finding defendant guilty on some counts and not guilty on other counts. The fact that the jurors initially had difficulty reaching a unanimous verdict on some counts does not mean that it must have been divided or confused about the factual basis for defendant's guilt on the felon-in-possession count. Defendant's mere speculation as to the initial misgivings of the jury is insufficient to demonstrate the jury was confused as to which acts constituted the felon-in-possession charge.

Lastly, to the extent that defense counsel should have requested a specific unanimity instruction, defendant has not demonstrated a reasonable probability that, but for counsel's failure to do so, the result of the proceedings would have been different. *Nix*, 301 Mich App at 207. Again, the record does not show that the prosecutor used three different acts to prove defendant's guilt of the felon-in-possession charge. Dunson testified at trial that defendant possessed a firearm on February 19, 2019. That the jury may have believed some of Dunson's testimony, but not all of it, does not mean that the jury was confused or disagreed about the factual basis of defendant's guilt of the felon-in-possession charge. A jury is free to believe all, none, or part of a witness's testimony. *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). Furthermore, in its final instructions, the trial court instructed the jury that "[t]he prosecutor must, also, prove beyond a reasonable doubt that the crime occurred on or about February 19th, 2019 within Wayne County." This instruction should have made it clear to the jury that, consistent with the prosecutor's arguments, the prosecutor was relying on defendant's possession of a firearm on February 19, 2019, to establish defendant's guilt of the firearm charges. Jurors are presumed to have followed their instructions, *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011), and defendant has not provided any basis for concluding that the jurors failed to do so in this case. For these reasons, defendant cannot establish a claim for ineffective assistance. *Nix*, 301 Mich App at 207 ("To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice.").

## III. DOUBLE JEOPARDY

Defendant next argues that his convictions and sentences for both felon-in-possession and felony-firearm violate his double-jeopardy right not to be subjected to more punishment than the Legislature intended. We disagree. Defendant did not raise this double-jeopardy issue in the trial court. Therefore, we review this unpreserved constitutional claim for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 762-763.

The United States and Michigan Constitutions both protect against double jeopardy, which includes protection against multiple punishments for the same offense. US Const, Am V; Const 1963, art 1, § 15. This prohibition includes "three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *People v Smith*, 478 Mich 292, 299; 733 NW2d 351 (2007) (quotation marks and citation omitted).

"The multiple punishments strand of double jeopardy is designed to ensure that courts confine their sentences to the limits established by the Legislature and therefore acts as a restraint on the prosecutor and the Courts." *People v Miller*, 498 Mich 13, 17-18; 869 NW2d 204 (2015) (quotation marks and citation omitted). This Court has explained:

> "[W]hen considering whether two offenses are the 'same offense' in the context of the multiple punishments strand of double jeopardy," courts "must first determine whether the statutory language evinces a legislative intent with regard to the permissibility of multiple punishments. If the legislative intent is clear, courts are required to abide by this intent." If the legislative intent is not clear, then courts must apply the "abstract legal elements" test to determine the legislative intent. [*People v Barber (On Remand)*, 332 Mich App 707, 714; 958 NW2d 288 (2020) (citations omitted).]

"The first criterion in determining legislative intent is the specific language of the statute." *Id*.

As defendant acknowledges, he raises an argument that has already been rejected by the Michigan Supreme Court in *People v Calloway*, 469 Mich 448, 450-452; 671 NW2d 733 (2003), and by this Court in *People v Dillard*, 246 Mich App 163, 166-171; 631 NW2d 755 (2001). Defendant asserts, however, that these cases were wrongly decided.

Under the felony-firearm statute, MCL 750.227b(1), it is a felony to carry or possess a firearm when committing or attempting to commit any felony other than the unlawful sale of a firearm, MCL 750.223, carrying a concealed weapon, MCL 750.227, unlawful possession of a pistol by a licensee, MCL 750.227a, and alteration or removal of identifying marks from a firearm, MCL 750.230. The Michigan Supreme Court has held that this list of four exceptions "is exclusive," and that "the Legislature's intent in drafting the felony-firearm statute was to provide for an additional felony charge and sentence whenever a person possessing a firearm committed a felony other than those four explicitly enumerated in the felony-firearm statute." *People v Mitchell*, 456 Mich 693, 698; 575 NW2d 283 (1998). In *Dillard*, this Court held that "[b]ecause [the] defendant's felon in possession charge unquestionably does not constitute one of the explicitly enumerated exceptions in the felony-firearm statute, we conclude that the Legislature clearly intended to permit a defendant charged with felon in possession [of a firearm] to be properly charged with an additional felony-firearm count." *Dillard*, 246 Mich App at 167-168 (footnote omitted). In *Calloway*, which was decided after *Dillard*, the Michigan Supreme Court, like this Court in *Dillard*, rejected the argument that dual convictions of both felony-firearm and felon-in-possession arising out of the possession of a single weapon violate double-jeopardy protections. *Calloway*, 469 Mich at 450-452.

Although defendant argues that *Calloway* and *Dillard* were wrongly decided, we are bound to follow decisions of our Supreme Court, *People v Strickland*, 293 Mich App 393, 402; 810 NW2d 660 (2011), and are also bound by our own precedent, MCR 7.215(J)(1). Consequently, we reject this claim of error.

## IV. SENTENCING

In his last claim on appeal, defendant asserts that he is entitled to resentencing because the trial court failed to justify, with permissible reasons, its decision to impose a sentence outside the sentencing guideline's recommended minimum sentence range of 5 to 28 months for his felon-in-possession sentence. We agree that resentencing is necessary and, therefore, vacate this portion of defendant's sentence and remand for resentencing for this offense.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "Resentencing will be required when a sentence is determined to be unreasonable." *Id*. When reviewing a departure sentence for reasonableness, this Court must review "whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017); see also *People v Dixon-Bey*, 321 Mich App 490, 521; 909 NW2d 458 (2017).

The crime of felon-in-possession is a class E offense, MCL 777.16m, governed by the sentencing grid in MCL 777.66. The trial court's scoring of defendant's sentencing guidelines resulted in zero offense variable (OV) points, and a total prior record variable (PRV) score of 45 points, which placed him in the D-I cell of the applicable sentencing grid, for which the minimum sentence range is 5 to 28 months for a second-offense habitual offender. MCL 777.66; MCL 777.21(3)(a). The trial court departed from this range and imposed a minimum sentence of 47 months.

Although the sentencing guidelines are only advisory, *Lockridge*, 498 Mich at 365, "the guidelines 'remain a highly relevant consideration in a trial court's exercise of sentencing discretion' that trial courts 'must consult' and 'take . . . into account when sentencing.' " *Steanhouse*, 500 Mich at 474-475, quoting *Lockridge*, 498 Mich at 391. "[D]epartures [from the sentencing guidelines range] are appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing." *Milbourn*, 435 Mich at 657. Thus, we must compare the stated reasons for exceeding the guidelines with the scored OVs and PRVs to determine whether those reasons were already accounted for in the guidelines. "[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Steanhouse*, 500 Mich at 472 (quotation marks and citation omitted). Factors that may be considered by a trial court under the proportionality standard include, but are not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017) (quotation marks and citation omitted).]

If this Court "determines that [the] trial court has abused its discretion in applying the principle of proportionality by failing to provide adequate reasons for the extent of the departure sentence imposed, it must remand to the trial court for resentencing." *Steanhouse*, 500 Mich at 476.

Our first inquiry in the reasonableness review is whether there were "circumstances that are not adequately embodied within the variables used to score the guidelines." *Milbourn*, 435 Mich at 659-660. In this case, the trial court's first stated reason was defendant's violent and "lengthy criminal history," consisting of prior felony and misdemeanor convictions. The court discussed defendant's "8 misdemeanors" over approximately 20 years, and his one "very serious, violent felony, where he assaulted by strangulation or suffocation" in May 2016. However, defendant's prior criminal record is reflected in PRV 1, for which defendant received 25 points for "1 high severity felony conviction," MCL 777.51(1)(c), and PRV 5, for which he received 20 points for "7 or more prior misdemeanor convictions," MCL 777.55(1)(a). The trial court's remarks do not explain why inadequate weight was given to these two variables, which embody the circumstances discussed by the court. Therefore, this reason given by the trial court—*i.e.*, defendant's prior criminal record—does not support its departure from the guidelines range.

Defendant also argues that the trial court improperly based its departure sentence on its own finding that defendant had committed conduct for which the jury acquitted him, contrary to *People v Beck*, 504 Mich 605, 609; 939 NW2d 213 (2019) (a trial court cannot rely on "acquitted conduct" when imposing sentence). To this end, defendant argues that even though the jury rejected the charges of first-degree murder (of Gentry) and assault with intent to commit murder (of Staples), the trial court improperly relied on the acquitted conduct related to these charges. Defendant claims that "the trial court had previously stated on the record [during trial] that it thought [he] was guilty of the crimes for which he was charged and ultimately acquitted of." Defendant also highlights the trial court's statement during sentencing in which it "emphasized that 'Mr. Staples was shot that day in the upper shoulder, and there were two gunshots to the back of Ms. Gentry's head as she was in a kneeling position and as her child was in the next room.' "

Preliminarily, defendant has not demonstrated how the trial court's comments when ruling on an evidentiary issue during trial and while discussing the evidence that had been presented during the prosecution's case-in-chief when denying defendant's motion for a directed verdict are relevant to what occurred at sentencing, *after* the jury returned its verdict. Indeed, at sentencing, the trial court explicitly recognized that it could not consider acquitted conduct when imposing sentence, stating:

> Now, one thing I want to make sure that's clear with regard to this sentence is, as the defense attorney pointed out, the jury found him not guilty of homicide and also of assault with intent to murder with regard to his friend. So I cannot take those factors into account when I do this sentence. And I want it very clear that I am not taking those factors into account when I give this sentence.

The trial court's commentary regarding what occurred in the house—Staples being shot in the shoulder and Gentry being shot in the head—does not suggest that it was referencing acquitted conduct to increase defendant's sentence. While it may have been better to avoid discussing the shootings at all, it is apparent that the trial court was considering that defendant, a felon, made the decision to be in a known drug house, where he engaged in a drug sale and where two people ended up being shot (not that he shot them), all while having been recently discharged from parole. While the particular comments highlighted by defendant, viewed in isolation, could be viewed as an improper basis for departure, when considered as a whole they reveal that the trial court was commenting on defendant's potential for rehabilitation, which is a permissible factor for a court to

-8-

consider in determining a proportionate sentence. *Walden*, 319 Mich App at 352-353. Consequently, considering the trial court's explicit statement that it was not considering the shootings as a factor in imposing sentence and the context of its commentary regarding the shootings, the record does not support defendant's argument that the trial court relied on acquitted conduct to increase defendant's sentence, contrary to *Beck*, 504 Mich at 609.

In sum, one of the reasons given by the trial court for departing from the guidelines range (i.e., defendant's prior criminal record) was an impermissible reason for imposing a departure sentence. See *Milbourn*, 435 Mich at 659-660. Although the trial court provided other permissible reasons that would support a departure from the guidelines range, and the trial court may well have departed from the guidelines range on the basis of those remaining reasons, the court did not adequately explain its reasoning for the extent of the departure imposed, and it is unclear from the record whether the court would have departed to the same extent without the one improper reason for departure. Accordingly, we remand for resentencing. *Steanhouse*, 500 Mich at 476.

We affirm defendant's convictions, but vacate defendant's felon-in-possession sentence and remand for resentencing on that offense. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly